# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**OLIVIER BABADJIDE,**

    **Plaintiff,**

v.

                                Case No: 6:17-cv-658-Orl-28TBS

**OFFICER RONALD BETTS,**

    **Defendant.**

## ORDER

On May 30, 2012, Olivier Babadjide was shot first with a taser and then with a pistol by Ronald Betts, a City of Cocoa Beach police officer. The shootings occurred during an altercation at a convenience store and were witnessed by several store employees and customers. Babadjide was later charged with battery on a law enforcement officer and resisting arrest with violence. A jury ultimately found Babadjide not guilty of those charges but guilty of the lesser charge of resisting arrest without violence.

Five years after the shooting, Babadjide filed this lawsuit[1] against Betts pursuant to 42 U.S.C. § 1983, alleging two Fourth Amendment violations—use of excessive force (Count I) and malicious prosecution (Count II). In a prior Order, the Court granted Betts's motion to dismiss the excessive force claim as barred by the statute of limitations. (Order, Doc. 32). Betts now seeks summary judgment on Babadjide's malicious prosecution claim.

---

[1] Babadjide filed a prior suit against Betts and other defendants in state court in 2014 that was removed to this Court in 2016. (M.D. Fla. Case No. 6:16-cv-1977-28TBS). That case was dismissed without prejudice in February 2017. (Order, Doc. 49, in Case No. 6:16-cv-1977-28TBS). Babadjide then filed this case in April 2017. (Compl., Doc. 1).

(Mot., Doc. 58). The Court considered the parties' submissions and governing law, and as set forth below, Betts's motion must be granted.

I. **Background**

After employees at a Cocoa Beach 7–Eleven observed Babadjide repeatedly enter the store on May 30, 2012, "acting strangely," they called the Cocoa Beach Police Department for assistance. (Marilyn Potter Statement, Doc. 58-1, at 4; see also Noreen Bullard Statement, Doc. 58-2, at 5–7). Within a few minutes, Betts arrived and asked Babadjide to step outside the store. (Potter Statement at 4). Several witnesses observed the interaction between the two, and in sworn statements taken shortly after the incident the eyewitnesses consistently described Babadjide as loud and agitated and Betts as calm and trying to calm Babadjide down. (See, e.g., Potter Statement at 5; Kathy Cregan Statement, Doc. 58-4, at 4–5; Tracy Warns Statement, Doc. 58-5, at 14; Ballard Statement, Doc. 58-6, at 16; Scott Daily Statement, Doc. 58-7, at 13).

According to the eyewitnesses, Betts repeatedly asked Babadjide to sit down. (See, e.g., Tracy Warns Statement at 5, 15). At least one eyewitness stated that Babadjide briefly sat down but then "jumped up" and "started yelling at the police officer, 'No, no, I'm not going to sit down. You are going to die today. You are going to die. I'm not going to sit down.'" (Id. at 5; see also id. at 15, 16). Babadjide "start[ed] to act aggressively towards the officer by taking a step or two towards him yelling 'Do it, do it, just go ahead and do it.'" (Gregory Warns Statement, Doc. 58-3, at 7, 14; see also Ballard Statement at 4 ("I heard the guy yelling, 'Just do it, do it, do it,' very loud."); Daily Statement at 6–7). After Babadjide moved toward Betts while yelling "You are going to die today," Betts shot Babadjide with his taser. (Gregory Warns Statement at 7, 15–16; see also Cregan Statement at 5 ("And then [Babadjide] turned at him, and he shot the taser.")). The only effect the taser had on

2

Babadjide was to make him angry and incite him to go after Betts. (See, e.g., Potter Statement at 6 ("But then the officer tased him, and then he got really agitated, then he started acting crazy, he started attacking the officer."); Bullard Statement at 8 ("[I]t didn't do nothing to the guy, except for pissed him off, and he just charged at the cop."); Gregory Warns Statement at 18 ("[W]hen he was struck by the taser, he kind of jumped up in the air and then he lunged forward towards the officer. . . . Immediately. It was like he became enraged."); Cregan Statement at 5–6 ("And then when the guy got hit by the taser, . . . it pissed him off. . . . [A]s soon as he got hit, . . . he turned around, he was extremely aggressive with the officer.")).

Numerous witnesses described Babadjide hitting Betts at that point. (See, e.g., Potter Statement at 6 ("He started hitting at him, hitting his face . . . ."); Bullard Statement at 8 (describing seeing Babadjide hit Betts three or four times in the face); Gregory Warns Statement at 8 ("[H]e . . . went towards the officer, striking the officer at least once in the face."); id. at 18 ("[Babadjide] attacked, fully attacked the officer at that point. . . . He struck him with his right hand across his face."); id. at 19 ("He hit him pretty hard with the fist."); Cregan Statement at 7 (Babadjide "was swinging at the officer"); id. at 11 ("And he told him to stop, and the guy just kept swinging and coming after him."); Tracy Warns Statement at 7 ("He was swinging and flailing his arms. He landed definitely a punch to his face, I saw it, because the officer's head went to the side."); id. at 20 ("I knew he connected because I saw the officer's head go."); id. at 21 ("For sure he hit him one time."); Ballard Statement at 6 ("[T]he man just started attacking the officer; punching, hitting him in the face, mostly."); id. at 8 ("He was walking towards him and throwing punches out."); id. (stating that the officer was struck "at least three times"); Daily Statement at 7–8 ("[T]hen he just jumped

3

straight up and went right at the officer . . . and started hitting on him.")). According to one eyewitness, after Betts "shoved [Babadjide] just to get enough time," Babadjide went "right back at him." (Tracy Warns Statement at 26). Just after a second officer, Manuel Hernandez, arrived at the store in his patrol car, Betts shot Babadjide twice with his .40-caliber handgun. As Babadjide himself stated in his deposition: "And after he shot me with the Taser, I think he startled me, and I got upset. So I walked toward him, like—because I was startled and I was upset, I think I tried to punch him or something like that. And that's when he shot me, I think." (Babadjide Dep., Doc. 58-8, at 55). As a result of the shooting, Babadjide is paralyzed and wheelchair-bound.

On July 5, 2012, Detective Thomas Cooper of the Cocoa Beach Police Department submitted an affidavit to a state circuit court judge for an arrest warrant for Babadjide on charges of battery on a law enforcement officer and resisting an officer with violence. (Affidavit for Arrest Warrant, Doc. 64-4). In that affidavit, Detective Cooper recounted the statements of eight eyewitnesses to the incident. (Id.). The same day, an arrest warrant was issued based on that affidavit, (Arrest Warrant, Doc. 58-9), and charges were filed by the assistant state attorney later that summer, (Doc. 58-10). After a trial, a jury found Babadjide not guilty of both of the charged offenses but guilty of the lesser offense of resisting an officer without violence.

In 2017, Babadjide filed this lawsuit against Betts, alleging claims of excessive force and malicious prosecution in violation of the Fourth Amendment. (Compl., Doc. 1). Only the malicious prosecution claim set forth in the Amended Complaint (Doc. 38) remains for resolution.

## II. Motion to Strike

In response to Betts's summary judgment motion, Babadjide filed a Response (Doc. 64) and five pieces of evidence: (1) the deposition of eyewitness Catherine Ballard taken on February 3, 2014, in Babadjide's criminal case (Doc. 64-1); (2) a Notice of Filing containing an Internet address for a YouTube video of the incident at issue (Doc. 64-2); (3) a September 1, 2013 "Video Summary Report" by an "audio and video specialist" regarding that video (Doc. 64-3); (4) the Affidavit for Arrest Warrant by Detective Cooper (Doc. 64-4); and (5) an affidavit of Babadjide (Doc. 66). Betts moves to strike three of these items—the Ballard deposition, the Video Summary Report, and Babadjide's affidavit—arguing that they "are not record evidence in the case and are not properly before the Court." (Mot. Strike, Doc. 68, at 1). Although these items are, at this point, "record evidence" because they are part of the record, the Court agrees that the deposition, the Report, and the portions of Babadjide's affidavit that contradict his deposition testimony should not be considered in deciding the summary judgment motion. And in any event, as Betts notes in his Reply (Doc. 67) regarding the summary judgment motion, this evidence does not establish a genuine issue of material fact anyway.

### A. Ballard Deposition

Betts moves to strike the Ballard deposition because it was taken during Babadjide's criminal case—to which Betts was not a party—and because Babadjide did not disclose Ballard as a witness in this case or identify her deposition testimony during discovery in this case. As Betts notes, Federal Rule of Civil Procedure 32(a)(8) allows a deposition taken in a prior action to be used "in a later action involving the same subject matter *between the same parties*" or "as allowed by the Federal Rules of Evidence." (Emphasis added). And Federal Rule of Evidence 804(b)(1) does not exclude as hearsay former

5

deposition testimony that "is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination."

Babadjide responds that Betts was a victim in the criminal case, "had a right to attend the deposition under Florida law," and was informed of it. (Doc. 69 at 3–4). But this does not satisfy the criteria of Federal Rule of Civil Procedure 30(a)(8) or Federal Rule of Evidence 804(b)(1). And Babadjide insists that the failure to disclose Ballard's deposition during discovery "was not done in bad faith, and was because [Babadjide] and presumably his prior counsel were not in the possession of" the deposition; instead, the deposition "was in the care, custody, and control" of Babadjide's current counsel. (Doc. 69 at 4). These arguments miss the mark and do not justify the nondisclosure or permit the use of the deposition now.

Even if the Court considered Ballard's deposition testimony, it would make no difference to the outcome of this case. The cited testimony is not as favorable to Babadjide as he suggests, and in any event it does not assist Babadjide in defending against summary judgment. Ballard's testimony does not bear on the two issues that dispose of Betts's motion—"legal cause of the original proceeding" and "absence of probable cause," as discussed in this Order infra.

### B. Babadjide Affidavit

Betts also seeks to strike Babadjide's summary judgment affidavit because it materially contradicts his prior deposition testimony. Betts focuses on three inconsistencies.

First, in his affidavit, Babadjide states that "at the time Officer Betts shot me, I was moving away from him, and I had my hands up." (Doc. 66 at 1). But as Betts notes, in his

6

deposition Babadjide testified: "So I walked toward him, like—because I was startled and I was upset, I think I tried to punch him or something like that. And that's when he shot me, I think." (Babadjide Dep, Doc. 58-8, at 55).

Second, in his affidavit Babadjide states: "On that day, I do not believe that I ever made any statements to Officer Betts, or any other individuals like '[t]oday is the day you are going to die' and or '[y]ou are going to die today.'" (Doc. 66 at 1 (alterations in original)). But in his deposition, when confronted with the numerous witness statements recounting him saying those words, he did not deny saying them but merely said he could not remember whether he said them. (See Babadjide Dep. at 56–57 ("Q: Are you denying using those words, or are you saying you just don't remember? A. I don't remember.")).

Finally, Babadjide's affidavit states that Betts "and his superiors conspired to destroy part of the video," (Doc. 66 at 1), though when asked at his deposition whether he had any evidence that Betts had anything to do with altering or destroying the video, Babadjide responded, "I don't have any evidence," (Babadjide Dep. at 57).[2]

Babadjide responds that his testimony is not inconsistent, that he "has had time to reflect since his deposition," and that "[a]t the time of his deposition he did not recall the

---

[2] Babadjide has since withdrawn his assertions that Betts personally altered the video. In his summary judgment response memorandum, Babadjide asserted that "[t]here is evidence that the video in this case was intentionally altered and destroyed," (Doc. 64 at 5), and that Betts "was a party to the intentional destruction of the video evidence in this case," (id. at 6). And in his Response (Doc. 69) to the motion to strike, Babadjide stated: "There was a video that depicted the entire incident, but the video has been partially altered and destroyed by the Defendant and shows the moment before the shooting and the moments after the shooting, but the shooting itself has been erased." (Doc. 69 at 1). Later, the Response reiterates "that Officer Betts was involved in the destruction of" the video. (Id. at 3). But Babadjide later supplemented his response "to clarify his position" about the alteration of the video. (Doc. 70 at 1). In his supplement, Babadjide acknowledges that "there is no evidence at this time that Defendant personally gained access to the video recording of the incident or personally altered it." (Doc. 70 at 2).

7

expert report that clearly shows that the dash cam video was altered and or [sic] destroyed." (Doc. 69 at 3). Although clearly there are some inconsistencies between Babadjide's affidavit and his deposition testimony, none of this testimony bears on resolution of the instant motion. Like the Ballard deposition testimony, it does not bear on the dispositive issues. And as discussed next, the video and the expert report about that video also have no bearing on these issues.

### C. Video Summary Report

Betts also objects to the Video Summary Report because it is the report of an expert who was never disclosed in this case as required by the Federal Rules of Civil Procedure and the Case Management and Scheduling Order (Doc. 20). Babadjide responds that the report was disclosed in Babadjide's criminal case and that the reason it was not previously disclosed in this action is because Babadjide's current counsel "did not file a Notice of Appearance in this case until a few days before the Response to Defendant's Motion for Summary Judgment was due." (Doc. 69 at 4). Babadjide insists that he and his prior counsel "were not [in] possession of the expert report" and that the report should therefore be allowed under Federal Rule of Civil Procedure 37 because the nondisclosure was "justified." (Doc. 69 at 5); see also Fed. R. Civ. P. 37(c)(1) (providing that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless").

The Court cannot find that the nondisclosure here was "substantially justified." The circumstances Babadjide describes—a change in counsel and the fact that his current counsel knew of the report while prior counsel did not—do not amount to a "substantial justification" for the failure to disclose. Thus, Babadjide may not rely on it now.

Even if the Court considered the Report, the outcome of this case would not change. The Report describes the video that was provided to the expert—by whom, it is not clear—and states the obvious: that the timestamp on the video jumps from 15:36:07 to 15:45:19, and thus apparently nine minutes of video are "missing." (Doc. 64-3 at 1). It further states that the audio is damaged and concludes: "This unexplained event could happen from a number of reasons, but judging from my expert advice there is defiantly [sic] 1.2 seconds missing from the . . . video [sic] file and 9 minutes and 12 seconds missing in the recording according to the time stamp." (Id. at 2). Neither the expert report nor the video itself[3] bears on the dispositive issues here, as neither negates probable cause or tends to show that Betts was the "legal cause" of Babadjide's criminal prosecution.

---

[3] Betts does not challenge the video, which was posted on YouTube by Babadjide on November 13, 2014, is titled "cocoa beach Florida illegal police shooting of /Olivier H Babadjide" [sic], and is described on YouTube as "May 30th 2012 cocoa beach police officer ron betts shoots Olivier Babadjide and video shows evidence of dash cam video manipulation by Brevard county Sheriff office and cocoa beach Pd [sic]." Babadjide purports to authenticate this video—taken by the camera on the dashboard of Officer Hernandez's police cruiser at the 7–Eleven—in his affidavit. (See Doc. 66 at 1 ("The video is a true and correct copy of the incident, except for the part that was illegally destroyed.")). Again, Betts does not challenge the video or the manner in which it has been "presented" to the Court, though the latter is, to say the least, questionable.

The video does not show the moment of the shooting. It shows Officer Hernandez's car driving up to the 7–Eleven, whereupon Babadjide can be seen moving along the sidewalk in front of the store from right to left. Betts is obscured by a vehicle windshield. Babadjide states in his affidavit: "You can actually see on the video of the incident, me backing away with my hands up, and Officer Betts proceeding towards me with his gun raised (visible through the windshield of the Jeep) . . . ." The Court does not agree with this characterization of what the video reflects. Then, the timestamp on the video skips from 15:36:07 to 15:45:19, and at 15:45:19 Babadjide is lying on a gurney being attended to by medical personnel.

Regardless of whether the video was altered, shortened, or destroyed by someone (an issue that is not before the Court), like the other evidence relied upon by Babadjide the video does not negate probable cause or tend to show that Betts was the legal cause of the criminal prosecution against Babadjide.

9

### III. Motion for Summary Judgment

#### A. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). But when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Anderson, 477 U.S. at 251–52). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

#### B. Discussion

The Eleventh Circuit "ha[s] identified malicious prosecution as a violation of the Fourth Amendment and as a viable constitutional tort under § 1983." Blue v. Lopez, 901 F.3d 1352, 1357 (11th Cir. 2018). "To establish a federal claim for malicious prosecution

under § 1983, a plaintiff must prove (1) the elements of the common-law tort of malicious prosecution and (2) a violation of the Fourth Amendment right to be free from unreasonable seizures." Id. In Florida, the common law tort of malicious prosecution consists of six elements: "(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant"; and (6) the plaintiff suffered damages as a result of the original proceeding." Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing Durkin v. Davis, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002)). In his motion, Betts argues entitlement to summary judgment on the basis that Babadjide cannot establish the second or fourth of these malicious-prosecution elements, and Betts is correct on both scores.

   1.   *Legal Cause of the Original Proceeding*

First, Babadjide has not presented any evidence to show that Betts was "the legal cause of the original proceeding" against Babadjide. Even where a police officer makes an arrest that leads to a criminal prosecution, "intervening acts by 'the prosecutor, grand jury, judge and jury' can break the chain of causation." Howard v. Gee, 538 F. App'x 884, 889 (11th Cir. 2013) (quoting Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989)). This is so because "[i]t . . . makes little sense to hold an officer responsible for the later decision to prosecute. That choice is made by others and based on evidence that exists apart from that officer." Id. (internal citation omitted).

Here, there is no evidence that Betts arrested Babadjide or was involved in his arrest or the decision to prosecute. Babadjide asserts in his summary judgment response that

11

Betts "initiated the criminal prosecution" of Babadjide, (Doc. 64 at 1); "sought [Babadjide's] prosecution in a criminal trial," (id. at 2); "was involved in swearing an arrest Affidavit for Olivier Babadjide, causing his arrest and prosecution," (id.); and "is named as the victim in each count of the Information . . . and . . . participated in swearing out an arrest warrant for the Plaintiff causing him to be arrested, and tried," (id. at 4-5). But these assertions are not supported by any evidence.

The arrest warrant affidavit (Doc. 64-4) that Babadjide submitted with his response was not sworn to by Betts, nor is there any indication that Betts was involved in its preparation. Instead, as noted earlier, the eight-page affidavit is sworn to by Detective Thomas Cooper, and it summarizes the statements of eight eyewitnesses to the incident, consistent with the sworn statements taken from witnesses on the day of the event. (See Arrest Warrant Aff., Doc. 64-4; Recorded Sworn Statements, Docs. 58-1 through 58-7[4]). The affidavit also mentions that Detective Cooper reviewed a recorded interview of Officer Hernandez, who arrived on the scene just before the shooting, (Doc. 64-4 at 6), but it makes no mention of any information for the warrant affidavit being provided by Betts himself. And even if Betts did provide an account of the events that was included in the affidavit, that would not render Betts the "legal cause" of Babadjide's criminal proceeding.

In support of his motion for summary judgment, Betts submitted an affidavit from Assistant State Attorney Guna Ose. In that affidavit (Doc. 58-11), Ms. Ose, the assigned trial prosecutor in Babadjide's criminal case, attests:

> I conducted an independent investigation of the available information and evidence when making my prosecutorial decision, and I reviewed a

---

[4] With his summary judgment motion, Betts submitted the sworn statements of seven of the eight witnesses mentioned in the arrest warrant affidavit. (Docs. 58-1 through 58-7).

12

significant amount of information in my decision to prosecute Mr. Babadjide. The information I reviewed included sworn eyewitness statements from numerous witnesses. Many of those sworn statements provided overlapping accounts of Mr. Babadjide's physical altercation with City of Cocoa Beach Police Officer Ronald Betts.

My decision to continue the prosecution against Mr. Babadjide was based upon the totality of the information and evidence available to me, including the multiple sworn eyewitness statements. My prosecutorial decision was not based specifically or exclusively upon the information provided by Officer Betts, and as such, Officer Bett[s]'s statement was not the cause for the prosecution against Mr. Babadjide.

(Doc. 58-11 at 1 (paragraph numbering omitted)). Babadjide offers nothing to contest this evidence.

Although intervening acts do not break the chain of causation where those acts "result from an officer's deception," Howard, 538 F. App'x at 889, there is no evidence of deception here. Babadjide conclusorily asserts that Betts "intentionally fabricated evidence" because statements that Betts allegedly gave to Detective Cooper "are vastly different" and that "there is ample evidence that Defendant Betts altered his statements, and pushed the prosecution of Babadjide out of self-preservation." (Doc. 64 at 5–6). Babadjide's bare assertions, however, are not "ample evidence" or any evidence at all.

Because there is no record evidence that Betts was the "legal cause" of the prosecution of Babadjide, Babadjide fails to establish the second element of common law malicious prosecution. Betts is entitled to summary judgment on this basis.

2. *Absence of Probable Cause for the Original Proceeding*

Second, there is no genuine issue of material fact as to whether there was an absence of probable cause for the criminal charges against Babadjide. There was clearly not such an absence.

13

To establish absence of probable cause, Babadjide must show that the criminal proceeding against him was initiated "without a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." Burns v. GCC Beverages, Inc., 502 So. 2d 1217, 1219 (Fla. 1986); accord Martinez v. Brink's, Inc., 171 F. App'x 263, 267 (11th Cir. 2006). "Under this standard, one need not be certain of the outcome of the criminal proceeding to have probable cause for initiating it." Martinez, 171 F. App'x at 267.

Again, Babadjide was charged with battery on a law enforcement officer and resisting an officer with violence. The crime of battery on a law enforcement officer consists of intentionally striking or touching a law enforcement officer against the officer's will while the officer is engaged in the lawful performance of his duties. See §§ 784.03(1)(a) & 784.07(2), Fla. Stat. And the elements of resisting an officer with violence are "knowingly and willfully resist[ing], obstruct[ing], or oppos[ing]" a law enforcement officer "in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the person of such officer." Id. § 843.01. The numerous sworn witness statements taken on the day of the incident and recounted earlier in this Order provide probable cause for both of these charges.

Babadjide attempts to overcome the existence of probable cause by arguing that "the events . . . leading up to the arrest are hotly disputed and contested." (Doc. 64 at 5). But the fact that Babadjide asserts a different version of events does not negate probable cause. See Martinez, 171 F. App'x at 268; Sussman v. City of Daytona Beach, 462 So. 2d 595, 596 (Fla. 5th DCA 1985) ("[T]he issue was not the guilt or innocence of Sussman but

14

whether or not the factual information reasonably relied upon by the police officers provided them probable cause to arrest Sussman."). Here, the basis for probable cause is the numerous witness statements upon which the prosecutor and the attesting officer—Detective Cooper—relied. Babadjide's sometimes contrary version of events simply does not bear on the sufficiency of probable cause for his prosecution.

Babadjide's inability to establish an absence of probable cause for the criminal proceeding against him also warrants the grant of Betts's motion for summary judgment.

## IV. Conclusion

Accordingly, it is **ORDERED** as follows:

1. Defendant's Motion to Strike (Doc. 68) is **GRANTED**, though the Clerk of the Court need not remove the stricken items from the record.

2. Defendant's Motion for Summary Judgment (Doc. 58) is **GRANTED**.

3. The Clerk is directed to enter a judgment providing that Plaintiff takes nothing from Defendant on any of his claims in this case.

4. After entry of judgment, the Clerk shall close this case.

**DONE** and **ORDERED** in Orlando, Florida, on February 14th, 2019.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

15